And we're ready to call our first case Howell v. Superintendent Albion SCI. Counsel for the appellant, as I understand we have a student advocate under the guidance of the supervisory professor. Please introduce yourself and if you want time for rebuttal, let us know. May it please the court, Your Honor, my name is Sean Andrew Sear from Duke University School of Law. This court appointed me pro bono counsel for Gerald Howell in this appeal. Clinic students from Duke entered appearances and I'm pleased to introduce one of them, Spencer Scheidt, to present oral argument for the appellant. Mr. Scheidt. Good morning, and may it please the court. My name is Spencer Scheidt representing Gerald Howell. With this court's permission, I'd reserve two minutes for rebuttal. This court has described the conviction of an innocent person as perhaps the most grievous mistake our judicial system can commit. Because of the gravity of such an affront to liberty, the Supreme Court has recognized an untimely habeas petitioner who can adequately demonstrate his actual innocence may still nonetheless pursue his habeas claims. Gerald Howell is such a for which he is actually innocent, for which he has been incarcerated since age 18, serving a life sentence without parole. His conviction was substantially based on the testimony of teenagers. Yet most of those teenagers, including two eyewitnesses, have averred that they falsely incriminated Howell to protect Kenneth Parnell. I'm sorry, let's get some questions about this, Mr. Scheidt, because we have a very well briefed, for which we thank you and the others at Duke, as well as counsel for the Commonwealth. But let me start by asking you, what's the appropriate standard of review here for us in this context? Well, Your Honor, I'm sorry, continue. Well, it certainly, I mean, it seems like we should be looking at this de novo, but what are we supposed to be doing? Our position is the appropriate standard of review is de novo review. This court in Minshinsky assesses a credible contention of actual innocence de novo and not extended to reliability determination. And de novo review seems particularly appropriate here when the district court did not hold an evidentiary hearing and thus was in no better position than this court to assess reliability on a paper record. Okay. Now, even with a de novo standard of review, do the traditional reasons given for concern about late recantations have a place in our analysis? Certainly, Your Honor. Recantations are historically treated as suspect, but that's not the end of the inquiry. Assessing recantations requires a holistic approach. And if you assess the Hearst, Williams, and Jones affidavits here, they are consistent, utterly plausible, corroborated, and they provide convincing reasons for why they lie at a trial. And the Commonwealth, while it contests the reliability of these affidavits, it, to its credit, does not oppose a remand to the district court for an evidentiary hearing if this court believes that further fact-finding is warranted regarding reliability. I want to clear that out at the outset. Everybody agree that this constitutes new evidence under Schlupf? The Commonwealth did not address newness in its brief, so I assume that they did not have an issue with it. But I believe under either standard of newness, Howell's evidence is new. It was certainly not presented at trial, and it was certainly not available at trial, so his evidence, I believe, is new. The real nub of the issue is whether it's reliable, and I think that Howell's evidence, his affidavits, are consistent, and that certainly favors reliability. The Hearst, Williams? I'm sorry? Does the Parnell recantation, which Parnell later disavowed, do anything to undermine what Jones and Williams and others did with respect to recanting? It might blunt the evidentiary value of the Parnell confessional letters and affidavits, but it certainly is not essential to Howell's gateway contention of actual innocence because all of the other affiants here incriminate Parnell. All of them point the finger at Parnell. All of them say that they lied to protect Parnell, and their accounts are consistent with Parnell's history of shooting people. Months before Allen was killed, Parnell shot and killed another man in a burglary attempt, and hours after Allen was killed, Parnell shot another man with what may have been the same murder weapon, and a reasonable juror would not think that that is simply a coincidence. And that point is important for another reason, too, because it points to a possibility that Parnell was incriminated here. Since the second shooting victim that night, John Williams, survived, he fingered Parnell as the shooter, which meant all police had to do to connect Parnell to the Allen murder was compare the bullet in John Williams to the bullet in Allen, and so Parnell had to incriminate someone else to avoid a potential death penalty case. And counsel, if I could just ask a question real quick. Judge Jordan asked about the probative value of recanted testimony, and how we and others have characterized that it is sort of inherently suspicious. What should we make of anything regarding Parnell's new confession, given that there were circumstances that could now impact why it is that his testimony has changed? Should we view that with any sort of additional skepticism? I'm sorry, Your Honor, are you asking whether we should review the Hearst-Jones and Williams affidavits with additional skepticism? Correct. I don't believe so. They're totally separate, and as I said, they all point the finger at Parnell. So while Parnell has apparently self-servingly disavowed his confession, that really just blunts the bonus that was the Parnell confession. I imagine it's fairly rare for affiants to finger someone as a true perpetrator, and for that perpetrator to actually say, yeah, it was me. So the fact that Howell doesn't have that maybe anymore, arguably, although we certainly contest whether that is something that can be relied on to disavow, it certainly isn't fatal to Howell's gateway contention, given how consistent his other affiants are. And to point out... Should we look at Parnell's original statement saying, I did it as of the time it was made, as of the time he was released from prison, or as of today? Well, Your Honor, it's hard to say, because Parnell is an untrustworthy person who's changed the story a bunch of times. So if this Court is concerned about that, I certainly think it could remand for an evidentiary hearing where Parnell could be called and could be cross-examined on this story, and we could finally get to the bottom of it. Yeah, well, certainly Parnell today is not going to say, I did it, because there's no statute of limitations, right? Correct. And that is worth pointing out, that he had a motive to lie at the resentencing hearing. He had a motive to lie back in 1983, because he was trying to avoid a murder charge. So that certainly is something that I think this Court should consider in assessing his confession. But to get back to the... There's been the flip side of that, Mr. Scheidt, that he also had, in a way that's not necessarily good for your client, he had nothing to lose by lying when he made the confession, because at the time he made it, he was serving a life sentence anyway, and there was no indication he was ever going to get out. So, you know, his recantation should be treated the way a lot of... Well, just the way Judge Enchez said it should, which is with real suspicion. Certainly, but at the time that he made that affidavit, he also faced no to lie. What were the consequences? That was the whole point of Judge Enchez pointing out that when he said those things, he was a lifer and there was nothing at all to indicate he'd be anything but a lifer. I understand, and yes, that was the basis for that decision. But as I mentioned earlier, Parnell isn't essential to Howell's contention of actual innocence. He didn't testify at Howell's trial. However, these three women did testify, and the recantations and their affidavits are key to Howell's gateway innocence contention, and these women provide convincing reasons for why they lied at trial. Hurston Jones said they are scared of Parnell, and that fear was borne out by what happened to Daryl Workman. Workman turned state's witness against Parnell in Parnell's murder trial, and Parnell's associates tried to get Workman to change his story, and when he refused, they killed him. So that not only corroborates the fear that Hurston Jones had, it also suggests that Parnell and his agents were willing to suborn perjury, which is precisely what Howell is alleging occurred here. And Arlene Williams, on the other hand, was the mother of Parnell's child, so she certainly had a reason to protect Parnell at trial. So crediting Howell's affidavits establishes a claim, a gateway contention of actual innocence. Now, it is a demanding standard to meet, but the Supreme Court in House v. Bell in 2006 has made clear that this does not require a conclusive case of innocence. One does not have to rule out evidence of guilt, for example, or, in this case, prove that Parnell was the killer beyond a reasonable doubt. In Howell's... You do have to look at all the evidence in the case in trying to assess reliability, right? Correct you, Your Honor. So, at least in Jones's case, there was some testimony about the, you know, beige jacket and black sneakers that were actually found in your client's possession. Does evidence like that, I mean, does it add to the weight of evidence on the other side in a meaningful way that should cause us to question later recantation? I don't think so, Your Honor, because of what happened with that evidence. The state tested the beige jacket and the shoes for gunpowder and blood, respectively, under the reasonable hypothesis that it would find those things, and those both came back negative. So, the only forensic testing conducted by the Commonwealth in this case seemed to favor Howell. The state also never recovered a murder weapon and never recovered the stolen ring that was the basis of Howell's robbery and, thus, his felony murder conviction. The state's case rested almost largely on the Was there anything besides the group of teenagers? I mean, you say largely and mostly. Was there something, was there physical, forensic, other kind of evidence besides eyewitness testimony that the Commonwealth relied on at the trial? The Commonwealth suggests that Howell owning a beige jacket is incriminating, but I don't see how simply owning a jacket that many people own is necessarily incriminating, especially when that So, I think that this case really came down to teenager credibility, and one of those teenagers, Daryl Workman, was a deeply non-credible witness. Workman changed his story at the police station, he changed his story on the stand, and, most importantly, he changed his story between his police interview and the stand. The final story that he told to police was that he and Parnell were walking together and he saw an unidentified perpetrator commit the crime. At trial, he said he, Parnell, and Howell were walking together and he knew it was Howell the whole time. That's a huge change, and a change that followed, I might add, Parnell being interviewed by police and testifying at the preliminary hearing to the three-man group theory. So, a reasonable juror might reasonably wonder, did Daryl Workman change his story to align with Parnell's? Judge Mabee or Judge Roth, do you have any further questions for Mr. Scheidt? Nothing further. No, nothing further. Okay, thank you, Mr. Scheidt. You have your two minutes for rebuttal. We'll have you back for that. I will call for counsel for the Commonwealth, please. Your Honor, may it please the Court, David Mabeeorski representing the Commonwealth Appellees in this matter. As you just heard, this matter involves Mr. Gerald Howell alleging that he is actually innocent of the crime that he was convicted of in 1983, which was felony murder. Can we jump right in on two things real quick, Mr. Mabeeorski, and just make sure we're narrowing this down first. Of course, Your Honor. Is it accurate that the state isn't contesting the evidence that Mr. Howell's relying on is new? That is correct. We are not contesting the newness. It was not that the evidence, as far as we can tell, was not available at trial and under Third Circuit precedent. We believe that that counts as new evidence. Okay, and in a footnote in your answer, as Mr. Scheidt pointed out, it appears that the Commonwealth isn't opposed to a remand for an evidentiary hearing if the Court thinks reliability remains in question. Is that also accurate? Let me clarify that in the footnote. The footnote two that you're referring to, all that the Commonwealth, all that we meant by that was that if the Court were leaning towards granting the motion, we would urge the Court to instead hold an evidentiary hearing or remand to the District Court for an evidentiary hearing on the questions of reliability. So your confession is, if we're about to lose, please remand. Is that the limit of it? Well, I wouldn't characterize it as a confession, but that would be our position. Okay. Well then, go ahead, and if you would, explain to us why, when it appears that the only evidence on which this man was convicted was indeed the testimony of a group of teenagers who were, even at the time, one might have suspected they were a little fearful of Mr. Parnell, given that he was about to be tried for a murder. Why shouldn't we look at that and say, hmm, traditional concerns about recantation, not so much an issue under circumstances where there's no physical evidence to speak of, and every witness that's alive and can say something about it appears to have thrown in the towel and said, you know, I lied? Well, I think a couple of things. For the first part, the jury did find all these witnesses credible at trial and did believe their testimony at trial, and they heard a lot of the inconsistencies that Appellant pointed out in his argument, that Workman changed his story, and Carla Hurst also admitted to lying to the police while she was on the stand, and the jury was unimpressed. The jury still found their trial testimony to be credible and convicted Mr. Howe. I would also say that there was no physical evidence. As was also mentioned, Mr. Howe was recovered with the beige coat and the black and white Adidas sneakers that were identified. How does the reality that a guy owns a beige jacket and a pair of black sneakers indicate that he shot somebody? We think that it's worth noting that in the police statements before Mr. Howe was arrested, everyone said the shooter had a beige coat, and Ms. Jones said he was wearing black and white Adidas sneakers as well. This all happened before Mr. Howe was arrested. It's not like he was arrested and they said, all right, that's what he was wearing. But the theory that I understand that Mr. Howe is presenting to us is that Parnell got his friends to lie. It was a put-up job. They fingered Howe because he was a person that people could say, hey, it was him because they had some familiarity with him. If you accept that theory, how is it corroborative of murder if they all say he has a beige jacket and black sneakers? Presumably, what Mr. Howe liked to wear back at the time in question is just something that he easily cooked up as he shot Mr. Allen. I would say that what he liked to wear was not something that was testimony that that's what the shooter was wearing. It was found on him. I'm not making myself clear. Maybe the answer is there's not a link here, but you point to that as physical evidence of the murder. It strikes me that's just physical evidence that a guy owns a beige jacket and sneakers. The testimony of the very same people who are all now saying I lied that it was him. Why is it just as plausible that the lie about it being him includes lying that I saw a guy with a beige jacket and black sneakers? That's just all of a piece. Well, not everyone who said that has recanted, I must point out. There were five witnesses at trial, and three of them have come forward with, to us, unreliable recantations. Yes, Daryl Workman is deceased, but when he was no inclination that he was going to recant or anything. For good reason, because if he had, he doesn't really help you, so who you got left? We have Warren Wright who testified, and I believe he's still alive, I don't know that for sure, that he has not recanted. He testified that Mr. Howell confessed the crime to him at a party later that evening, a party that Mr. Howell said that he and the fact that we still have that confessional testimony to Warren Wright, we believe is, you know, without anything else, even without the additional material in our supplemental appendix, would be enough for a reasonable juror to convict Mr. Howell. Well, if that were the only evidence, yes, but if you have the three women, three young women, saying that it was Parnell, uh, that's certainly not going to be enough to convict, right? Well, I would argue that the three young women saying it was Parnell are not at all reliable, so just the fact that they say that is not enough. You have to look at why they said it and when they said it, and the fact that these are recantations that amount to perjury, which a panel of this court has said is the least possible, isn't that the point of Judge Jordan's question to begin with? That sounds like a perfect subject for an evidentiary hearing, and to make that claim, you would need to test that testimony if you're censorship of examination, so I guess I'm, I guess I'm not sure why your, uh, your concession is perhaps not a little bit more robust on this point, if that's going to be your argument. Well, I, we don't, I necessarily believe an evidentiary hearing is, is necessary here. Mr. Parnell, I did testify to his confession in state court, and those notes of testimony are part of the supplemental appendix, or he testified that he was, uh, coerced into signing his affidavit, and the recant, and as to the three recantations, I mean, I would just point out that there was a long delay between the crime and conviction and when these recantations were prepared. In the case of Ms. Williams, two, uh, almost two and a half decades, and in Ms. Jones and Ms. Hearst, three decades, and there is no, to my knowledge, explanation for that, that delay, and a large delay like that. Does the delay perhaps indicate, uh, or add to credibility? I mean, could a, could a thoughtful fact finder look at that and say that's a function of two and a half decades, that, uh, these are more mature people and, uh, they really do believe Parnell is, uh, not going to be in a position to hurt him? I, I don't necessarily, I don't think so. I think that, that the only thing that ties these recantations together is that they seem to crop up when Mr. Howell believes he needs something, and after the, his habeas was denied, then we get the Williams recantation, and after the court found that unreliable, then we get these two other recantations, which the court then found unreliable. And, uh, a panel of this court, in denying the Certificate of Appealability from the first motion to, for the first 6th ED motion, essentially affirmed that the Parnell confession and the Williams recantation were not sufficiently reliable to meet the demanding Schlupp standard. The finding further corroboration, uh, we have reconsidered, uh, the Certificate of Appealability on, on the, on the whole question, and, and shouldn't the district court look at this picture as a whole then with all these affidavits instead of just with the two earlier, uh, um, Parnell and, and, and, uh, Williams recantation? Well, Your Honor, the district court has looked at it with all the recantations. In this, in this motion, it saw all three recantations and the Parnell affidavit, and it found it all, all unreliable. And in addition to the, to the reasons that it found unreliable, I would add that some of the, of the trial testimony that they're recanting was corroborated, and that Mr. Parnell, how? What was the corroboration? Are we back to the jacket? Well, not just the jacket, but the, the, the testimony that, that Howell was there with a, a pistol was corroborated by not, also Darrell Workman and by Parnell in his preliminary hearing testimony. Okay. Is the, is the fact that Workman is dead, is that something, and, and, and by, uh, confession to state, it seems it's unrebutted that he was and murdered at the direction of Parnell. Does that lend, uh, or should it lend, uh, any weight to our consideration of whether or not, uh, the recantation, which specifically recites fear of Parnell, uh, for lying at the time, uh, are, are now credible recantation, more credible because there's an actual example of Parnell killing somebody who was going to testify against him? Well, I, you know, the state did not rebut that. I have personally no, no evidence to suggest that that is or is not true, that, that Mr. Workman was murdered for testifying because he was going to testify against Parnell. And if that is true, I still don't think it adds, adds any particular weight to the recantations. You don't, you don't think the fact that somebody comes forward and says, yeah, I lied and here's why I lied, because he would kill me. Oh, by the way, some other guy who testified in this case, he did get killed. You don't think that's relevant? I think it, I think the fact that the recantations popped up so long after the fact and without any apparent motive for the, the spontaneous alleged truth-telling cuts against the, the alleged motive for initially lying. Well, that, that might cut against it, but are you honestly saying it's not relevant? I'm not saying it's not relevant. I mean, I, I'm not, I didn't mean to, to, to, if that's what came across, I'm not saying it's not relevant. And hence, isn't that the kind of thing that a fact finder should start thinking about and weighing in the context of an evidentiary hearing? I, well, the, the, when the district court looked at this stuff, they didn't, they didn't, you know, assess an evidentiary hearing was necessary. Chief Judge Sanchez saw all of these recantations and saw the reasons and found them flatly unreliable, did not, did not see the need for an evidentiary hearing. Yeah. Well, that's why we're talking now, right, is whether, is it enough to rely on the traditional suspicion of recantations in the context of a case when the shooter has recanted and the three of the four living witnesses have recanted and one witness was shot dead allegedly because he was prepared or was in a position to testify against Parnell. That's the, that's the question I guess we're dealing with right now is those additional facts suggest that, well, maybe reliability isn't easily disposed of on the basis of a presumption against reliability for late recantations. That's the question, right? Yeah. Yes, Your Honor. And I, I, I think that under, I know, under those circumstances, if the court is, you know, is feeling that way, an evidentiary hearing might be appropriate. Okay. Judge Roth or Judge Mady, anything else for Mr. Naborski? Nothing further. Nothing from them. Okay. Well, we thank counsel for the Commonwealth. Mr. Scheidt, you have your two minutes for rebuttal. Thank you, Your Honor. Three quick points. First, my, the opposing counsel suggests that the jury found all of these teenagers to be credible and that's not necessarily so. The Hearst, Jones, and Williams testimony really propped up the non-credible testimony of Workman and now those props have been removed and the state is non-credible for multiple reasons. Second, the state suggests that the testimony of Warren Wright could be enough to convict Howell, but that's not the inquiry that we're trying to do here. This isn't a sufficiency of the evidence test. We're asking what would a, is it likely that a reasonable hypothetical juror would have reasonable doubt? And is there, does anybody know where Wright is? We do not know. We don't even know if he's still alive. Okay. But his testimony was really not, not very impactful. He said that he heard Howell say, I got a body. So given all of the other evidence that's come forward, it's hard to see how a reasonable juror could look to Warren Wright to find Howell guilty beyond a reasonable doubt. And my third point is getting to questions that this court was asking, which is that this isn't the run-of-the-mill recantation case with a single recanting witness that maybe doesn't counter key testimony. This is a case where we have multiple recanting witnesses, a critical mass of affiants who are eliminating key testimony, consistently fingering Kenneth Parnell, a man who was unquestionably there, who shot another man hours later with what appears to be the same weapon, and whose associates killed Daryl Workman after attempting to suborn perjury from him. So this is a unique case, and I think it calls out for at least, at the very least, an evidentiary hearing, because we're trying to avoid a miscarriage of justice. For those reasons, we think this court should vacate the order below and remand for further proceedings. All right. Thank you, Mr. Scheidt. Again, we appreciate your work and the colleagues here in the clinic, and likewise appreciate you being represented here and providing argument. We've got the case under advisement.